IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| **BRETT HULL** *et al.* | ) |
| | ) Case No. 3:23-cv-00244 |
| v. | ) |
| | ) |
| **GOLD SHEEP, LLC** *et al.* | ) |

**To: The Honorable Waverly D. Crenshaw, Chief District Judge**

## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiffs' motion to enforce settlement (Docket No. 52) to which Defendants responded in opposition (Docket No. 55) and Plaintiff replied in support (Docket No. 56). This matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) for initial consideration and a Report and Recommendation. (Docket No. 54.) For the reasons that follow, the undersigned Magistrate Judge respectfully recommends that Plaintiffs' motion (Docket No. 52) be **GRANTED IN PART** as provided for below and subject to determination of the amount of reasonable attorneys' fees upon proper application by Plaintiffs.

### I. BACKGROUND[1]

Plaintiffs and Defendants entered into several contractual agreements related to Plaintiffs' commissioned sale of Defendants' clothing. (Docket No. 1 at ¶¶ 7–10; Docket No. 13 at ¶¶ 7–10.) Disputes arose between the parties, which they agreed to resolve by entering into a Settlement Agreement on July 18, 2022 (the "2022 Settlement Agreement"). (Docket No. 1-2.) Plaintiffs claim that Defendants failed to make required payments under the 2022 Settlement Agreement, though Defendants deny this allegation. (Docket No. 1 at ¶ 21; Docket No. 13 at ¶ 21.)

---

[1] The underlying facts and procedural background are taken from the record and, unless otherwise noted, the facts are largely undisputed.

Accordingly, on March 17, 2023, Plaintiffs filed a lawsuit seeking damages for Defendants' alleged breach of the 2022 Settlement Agreement and for Defendants' alleged unjust enrichment. (Docket No. 1 at ¶¶ 30–44.) Plaintiffs sought monetary damages in the form of principal, interest, commission payment, and reasonable fees and expenses, including attorneys' fees. (*Id.* at 9.) Plaintiffs filed a motion for partial summary judgment on September 1, 2023 (Docket No. 31), to which Defendants responded (Docket No. 37) and Plaintiffs replied (Docket No. 39). That motion remains pending.

During this litigation, Defendants failed to meaningfully participate in the discovery process. After Plaintiffs brought certain discovery issues to the Court's attention, the Court found that Defendants had failed to comply with their initial disclosure obligations under Federal Rule of Civil Procedure 26(a)(1)[2] and had failed to respond or produce documents in response to previously propounded interrogatories, requests for production, and requests for admission. (Docket No. 40.) The Court awarded Plaintiffs reasonable expenses, including attorneys' fees, related to Defendants' failures to comply with their initial disclosure and discovery obligations.[3] (*Id.*)

Shortly these events, the parties engaged in settlement discussions. On November 7, 2023, Defendants' counsel sent an email listing eight settlement terms that the parties appear to have discussed. (Docket No. 52-2 at 14–15.)[4] Those terms included, among others, that Defendants

---

[2] Unless otherwise noted, all references to rules are to the Federal Rules of Civil Procedure.

[3] Plaintiffs filed a motion for attorneys' fees in connection with these discovery issues. (Docket No. 46.) That motion remains pending.

[4] Plaintiffs' attorney initially disputed that there were ongoing settlement discussions (Docket No. 52-2 at 13-14), but ultimately responded to Defendants' original proposed settlement terms. (*Id.* at 12-13.)

would pay Plaintiffs $30,000 on the date of the settlement agreement and then pay another $30,000 on February 1, 2024, and that the parties would file a joint motion for entry of a stipulated judgment against Defendants in the current amount of all unpaid obligations, "including attorneys' fees and expenses." (*Id.*)

In response, on November 12, 2023, Plaintiffs' counsel suggested revisions to several of the terms – including that Defendants would make one payment of $60,000 rather than two payments of $30,000 – and added an additional term regarding Defendants' consideration of lenders. (Docket No. 52-2 at 12–13.) On November 27, 2023, Defendants' counsel responded, "If we can do two $30,000 payments, as previously proposed (one immediately, one in February), we are in agreement as to the other terms." (*Id.* at 11.) On December 1, 2023, Plaintiffs' counsel responded, "That is acceptable to our clients, and we will begin preparing the documents." (*Id.*) The final terms that were the subject of this email exchange are as follows:

1. On the date of the Settlement Agreement, Defendants shall pay the Hulls $30,000 by wire transfer, which shall be credited toward the balance of Defendants' debt to the Hulls. An additional $30,000 will be due and payable on February 1, 2024.

2. Within three business days of entering the Settlement Agreement, the parties will file a joint motion for entry of a stipulated judgment (the "Judgment") jointly and severally against Defendants in the current amount of all unpaid obligations owed by Defendants to the Hulls, including attorneys' fees and expenses, with interest accruing at 8% *per annum* on the entire balance of the Judgment. As of October 16, 2023, the amount owed (excluding attorney fees and court costs) is $328,721.94.

    a. Because the Hulls will have already received the $30,000 payment referenced above, the amount of the Judgment will be reduced by this amount.

3. Upon the Court's entry of the Judgment, the Hulls will agree to accept repayment by Defendants in twelve equal, amortized quarterly installments, beginning on December 31, 2023 with the final payment becoming due on December 31, 2026.

3

4. Unless or until Defendants default under the Settlement Agreement, such as by failing to make a quarterly payment when and in the amount agreed, the Hulls shall take no action to enforce or execute upon the Judgment other than registering or domesticating the Judgment where the Hulls deem appropriate and perfecting their judgment lien against Defendants' assets.

5. For a period of 45 days following the execution of the Settlement Agreement, the Hulls will consider, and not unreasonably refuse, requests from no more than two potential institutional lenders with no affiliation to the Goldsheep Parties or Peter Wilson, to enter a subordination agreement with Goldsheep and such lender(s) to provide for the subordination of the priority of the Hulls' security interests and Judgment lien against Goldsheep's assets in exchange for the extension of credit to Goldsheep (only to the extent required to secure the Goldsheep's obligation to repay the principal balance, plus accrued interest, of such additional credit). Goldsheep shall not use any such credit obtained for any purpose other than to pay (i) unaffiliated third-party vendors in connection with arms-length transactions entered in the ordinary course of Goldsheep's business or (ii) the Hulls.

6. Defendants will reaffirm all their obligations and agreements set out in the Transaction Documents, as modified by a new Settlement Agreement, including their pledge of all their personal property assets as collateral for their repayment obligations to the Hulls.

7. Upon the occurrence of an event of default, the Hulls may enforce all remedies permitted under law or equity against all counterparties to the Settlement Agreement, including the option to accept ownership of all of Goldsheep's intellectual property assets, including but not limited to all trademarks, designs and customer lists in partial satisfaction of the then unpaid balance of the Judgment.

8. If the Hulls receive 80% of the amount of the Judgment, plus interest accrued on the Judgment through the date of such prepayment, by December 31, 2024, Defendants shall be released and discharged of their liability for the remaining balance of the Judgment, which will then be satisfied.

9. The Settlement Agreement will be governed by Tennessee law, and the parties shall consent to the exclusive jurisdiction of the courts located in Nashville, Tennessee for the adjudication of all disputes related to the Settlement Agreement.

(*Id.* at 12–15; Docket No. 52-1 at 2–3).

On December 5, 2023, the parties filed a joint notice of settlement agreement in principle, in which they asked the Court to stay all remaining deadlines pending execution of a final settlement agreement. (Docket No. 47.) The Court granted this motion, stayed all remaining case management deadlines, and ordered the parties to submit a joint filing in resolution of this action by December 28, 2023. (Docket No. 48.)

The parties continued to exchange emails regarding the formal settlement agreement. On December 13, 2023, Defendants' counsel shared a draft settlement agreement and exhibits (the "initial draft") with Plaintiffs' counsel and asked for "any comments, suggested changes, or confirmation of [Defendants'] assent." (Email Correspondence, Docket No. 52-2 at 6 and Docket No. 52-3.) The initial draft included a "sum of Defendants' indebtedness to Plaintiffs" which totaled $458,261.73 and comprised of the following: "a. the Note principal of $300,000; b. the Note interest of $23,667.54; c. the Commission Payment of $9,000; and d. Plaintiffs' attorneys' fees in the amount of $125,594.19." (Docket No. 52-3 at 1–2.) In other words, the initial draft included, for the first time, the exact amount of Plaintiffs' attorneys' fees.

On December 26, 2023, Defendants' counsel responded to the initial draft and identified two issues. (Docket No. 52-2 at 4.) First, counsel asked for "proof of the attorney's fees" and stated, "While I realize our discussions including [sic] attorney's fees, this figure is a significant barrier. This figure increased the amounts of the quarterly installments my clients were expecting to pay substantially." (*Id.*) Second, counsel stated that the parties had never discussed Paragraph 18(b), which related to relief from the automatic stay pursuant to Section 362 of the Bankruptcy Code. (*Id.*) In response and on that same day, Plaintiffs' counsel provided a table that listed the total amounts that had been billed to Plaintiffs for fees and expenses occurring from August 2022

5

to October 2023, all of which totaled $125,594.19. (*Id.* at 17.) Plaintiffs' counsel also agreed to remove Paragraph 18(b) from the settlement agreement. (*Id.* at 16.)

With the provision of proof of attorneys' fees and an agreement to remove Paragraph 18(b), Plaintiffs' counsel sent a revised draft settlement agreement and exhibits (the "final draft") to Defendants' counsel and requested "any further comments or confirmation of [Defendants'] assent" by the close of business that day, December 26, 2023. (Email Correspondence, *Id.* at 16 and Docket No. 52-4.) Despite several follow up emails, Plaintiffs' counsel were not able to get any further comments or confirmation of agreement from Defendants' counsel via email. (Docket No. 52-2 at 2–3.)

Counsel for the parties spoke on the phone, on December 28, 2023, to discuss the settlement agreement. Plaintiffs assert that Defendants' counsel made representations that Defendants did not intend to execute the final draft and did not have sufficient funds to make the initial $30,000 payment. (Docket No. 52-1 at 6.) After this call, Plaintiffs requested a telephone conference with the Court to discuss the difficulties they were encountering. (Docket No. 49.) Following the telephone conference[5], Plaintiffs filed the presently pending motion to enforce settlement agreement (Docket No. 52) and the Court lifted the previously imposed stay of all case management deadlines (Docket No. 53).[6]

In Plaintiffs' motion, they allege that the parties agreed to settle Plaintiffs' claims based on certain terms to which Defendants agreed and became bound, but with which Defendants now

---

[5] During the telephone conference, Defendants' counsel stated that Defendants would oppose any motion to enforce a settlement agreement. *See* January 18, 2024 Order (Docket No. 53) at 1.

[6] Defendants' counsel record, Lauren Paxton Roberts, also filed a motion to withdraw around this same time. (Docket No. 51). That motion is still pending. During all times relevant to the instant dispute, Ms. Roberts was, and remains, as counsel of record for Defendants.

refuse to comply. (Docket No. 52-1.) Plaintiffs ask the Court to enforce the parties' settlement agreement, which they argue is memorialized in both the email correspondence that the parties exchanged in November and December 2023 and in the final draft of the Settlement and Reaffirmation Agreement that Plaintiffs' counsel shared with Defendants' counsel on December 26, 2023. (*Id.* at 10.) ("While the Email Correspondence constitutes a binding settlement agreement, the unsigned Settlement and Reaffirmation Agreement also evidences a valid and binding agreement between the Parties.") Accordingly, Plaintiffs ask the Court to enter judgment against Defendants in compliance with Paragraph 2(b) of the Final Draft, which provides that, if Defendants fail to make the initial $30,000 payment, a consent judgment will be entered. (*Id.*; Final Draft, Docket No. 52-4 at 2 ¶ 2(b).)

In a brief response, Defendants state that they agreed that a stipulated judgment would be entered for $328,721.94, plus attorneys' fees and expenses, but argue that they did not agree to the amount of attorneys' fees and expenses. (Docket No. 55 at 1.) They assert that the specific amount of attorneys' fees and expenses – $125,594.19 – was not shared with Defendants until *after* Defendants agreed to pay the fees, and that this amount is "grossly disproportionate" to the work done on the case. (*Id.* at 1–2.) They also state that their business was less profitable than anticipated, so they no longer have the liquidity to make the initial $30,000 payment or the second $30,000 payment that was due on February 1, 2024. (*Id*. at 2.)

As discussed below, the Court finds that there is an enforceable settlement agreement between the parties, as described in the settlement terms discussed in the series of emails between counsel from November 7 through December 1, 2023 (Docket No. 52-1 at 1-2; 52-2 at 12-15), and therefore recommends that the motion to enforce settlement (Docket No. 52) be granted on that basis.

7

## II.  LEGAL STANDARDS AND ANALYSIS

In their motion, Plaintiffs maintain that the parties' written agreement, as reflected in both the email correspondence and the unsigned Settlement and Reaffirmation Agreement, is a binding and enforceable contract. Defendants, however, argue that the settlement is not enforceable because there was no meeting of the minds as to the amount of attorneys' fees provided for in the terms of the proposed settlement.

### A.  The parties entered into an enforceable settlement, as evidenced by the email exchanges between November 7, 2023 and December 1, 2023. (Docket No. 52-1 at 1-2; Docket No. 52-2 at 12-15.)

"A settlement agreement made during the course of litigation is a contract between the parties, and as such, contract law governs disputes concerning the formation, construction, and enforceability of the settlement agreement." *Waddle v. Elrod*, 367 S.W.3d 217, 222 (Tenn. 2012) (citations omitted). A district court has the inherent power to enforce a settlement agreement between parties in litigation. *Bamerliease Cap. Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992); *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988). This power to enforce a settlement agreement "has its basis in the policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation." *Kukla v. Nat'l Distillers Products Co.*, 483 F.2d 619, 621 (6th Cir. 1973).

However, "[b]efore enforcing settlement, the district court must conclude that agreement has been reached on all material terms." *Brock*, 841 F.2d at 154. *See also Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000). "Whether the parties actually reached an agreement is a question of fact for the district court." *Moore v. U.S. Postal Serv.*, 369 F. App'x 712, 717 (6th Cir. 2010). This question is governed by state contract law. *Cuyahoga Valley Ry. Co. v. U.S. Bank Trust Nat'l Ass'n*, 515 F. App'x 494, 498 (6th Cir. 2013) ("Because settlement

agreements are a type of contract, the formation and enforceability of a purported settlement agreement are governed by state contract law.").

Under Tennessee law, a contract is simply "an agreement between two parties, based on adequate consideration, to do or not to do a particular thing." *Bill Walker & Assocs., Inc. v. Parrish*, 770 S.W.2d 764, 771 (Tenn. Ct. App. 1989) (citation omitted). The requirements of a valid contract are well settled in Tennessee:

> [A contract] may be either express or implied. It may be written or oral. It must result from a meeting of the minds of the parties in mutual assent to its terms. It must be founded on a sufficient consideration. It must be mutual, free from fraud or undue influence, not against public policy, and sufficiently definite.

*Am. Lead Pencil Co. v. Nashville, Chattanooga & St. Louis Ry.*, 134 S.W. 613, 615 (Tenn. 1911). *See also Conner v. Hardee's Food Sys., Inc.*, 65 F. App'x 19, 22 (6th Cir. 2003) (citing *Johnson v. Cent. Nat'l Ins. Co.*, 356 S.W.2d 277, 281 (Tenn. 1962)) (under Tennessee law, contracts may be oral or written); *Delgado v. UHS Lakeside, LLC*, No. 11-3111, 2013 WL 4648294, at *5 (W.D. Tenn. Aug. 29, 2013) (quoting *Johnson*, 356 S.W.2d at 281) (in order for a written or oral contract to be enforceable under Tennessee law, it must result from a meeting of the minds of the parties in mutual assent to the terms).

Whether the parties had a meeting of the minds is judged by an objective standard, from the express words of the parties and their visible acts, not by their subjective states of mind. *Gurley v. King*, 183 S.W.3d 30, 43 (Tenn. Ct. App. 2005). *See also Broadnax v. Quince Nursing & Rehab. Ctr., LLC*, No. W2001-00819-COA-R3-CV, 2009 WL 2425959, at *3 (Tenn. Ct. App. Aug. 10, 2009) (quoting *T.R. Mills Contractors, Inc. v. WRH Enters., LLC*, 93 S.W.3d 861, 866 (Tenn. Ct. App. 2002)). In other words, courts "must determine whether a reasonable onlooker, based upon the parties' outward manifestations," would conclude that the parties agreed to be bound by the terms of the agreement. *Moody Realty Co. v. Huestis*, 237 S.W.3d 666, 674 (Tenn. Ct. App. 2007).

9

Here, the parties do not dispute that they agreed to settle this litigation; that the amount owed by Defendants was $328,721.94, excluding attorneys' fees and court costs; that a stipulated judgment would be entered for $328,721.94, plus attorneys' fees and court costs; that an initial payment of $30,000.00 was to be made along with entry of the agreement; and that a second payment of $30,000.00 was to be made on February 1, 2024. *See* Defendants' Response (Docket No. 55) at 1. The parties disagree, however, on whether they had a meeting of the minds as to the *amount* of attorneys' fees that Defendants owe to Plaintiffs. Plaintiffs argue that the parties agreed that Defendants would pay attorneys' fees, and the specific amount is irrelevant. Defendants argue that the parties did not agree to the amount of attorney's fees and the term proposed by Plaintiffs (i.e., paying $125,594.19) was "vastly different than Defendants were led to believe." (Docket No. 55 at 2.)

Notably, neither party addresses in any substantive detail whether and to what extent an attorneys' fee provision might constitute a material contract term. Here, the Court finds that the parties entered into a contract that resulted from a meeting of the minds as to all material terms. Email correspondence between the parties' counsel between November 7 and December 1, 2023, shows that the parties intended to settle this lawsuit by entry of a stipulated judgment providing for Plaintiffs' dismissal of their claims in exchange for payment from Defendants. (Docket No. 52-2 at 11–15.) That payment clearly included attorneys' fees, as evidenced by Defendants' counsel's own initial email proposing the terms of the settlement agreement (*id.* at 14) and Defendants' response to the instant motion. (Docket No. 55 at 1.)

The entirety of the circumstances demonstrates that the attorneys' fee provision is a material one to which Defendants assented. Defendants previously agreed to pay Plaintiffs'

attorney's fees in the 2022 Settlement Agreement (Docket No. 1 at ¶ 18; Docket No. 13 at ¶ 18)[7]; Plaintiffs sought attorneys' fees in connection with their claims in this litigation (Docket No. 1 at 9, ¶¶ 28, 40); and payment of attorneys' fees was included in the original settlement terms proposed by Defendants. (Docket No. 52-2 at 14.) As this Court has noted:

> Properly understood, contractual interpretation is not about interpreting particular contractual provisions in isolation, but rather about construing the contract *as a whole.* "The proper construction of a contractual document is not dependent on ... any single provision of it, but upon the entire body of the contract and the legal effect of it as a whole. The whole contract must be considered in determining the meaning of any or all of its parts." *Aetna Cas. & Surety Co. v. Woods*, 565 S.W.2d 861, 864 (Tenn. 1978) (citation omitted).

*Thornton v. Dutch Nats. Processing, LLC*, 629 F. Supp. 3d 777, 789 (M.D. Tenn. 2022) (emphasis in original). Further, "[t]he principal apparent purpose of the parties is given great weight in determining the meaning to be given to manifestations of intention of any part thereof." *Aetna Cas. & Sur. Co. v. Woods*, 565 S.W.2d at 864 (Tenn. 1978) (citation omitted). Here, the parties' purpose was to settle all disputes between them in this litigation. To that end, and under the entirety of the circumstances, the Court construes the attorneys' fees provision as a material term about which there was a meeting of the parties' minds and mutual assent.

Although the exact amount of attorneys' fees was not memorialized in the parties' initial email exchanges, the Court finds that the *amount* of attorneys' fees is not an essential or material term of the settlement agreement. "Destruction of contracts because of uncertainty has never been favored by the law, and with the passage of time, such disfavor has only intensified." *Gurley*, 183 S.W.3d at 34. Accordingly, the fact that the original settlement terms did not specify an amount of attorneys' fees does not alter the determination that the settlement is enforceable. *Id.* at 36–37 ("It

---

[7] Notably, the 2022 Settlement Agreement provided for collection of "reasonable attorneys' fees" from the breaching party. (Docket No. 1-2 at 10.)

is not required that all terms of the agreement be precisely specified, and the presence of undefined or unspecified terms will not necessarily preclude the formation of a binding contract.") (quoting *Situation Mgmt. Sys., Inc. v. Malouf, Inc.*, 430 Mass. 875, 878, 724 N.E.2d 699 (2000)).

Further, the Court's determination that the amount of attorneys' fees is not a material term that undoes the settlement is bolstered by the rule that "the amount of the [attorneys'] fee[s] must be reasonable, even if the contract does not so require." *VRF Eye Specialty Grp. v. Yoser*, 765 F. Supp. 2d 1023, 1034 (W.D. Tenn. 2011) (quoting *First Peoples Bank of Tenn. v. Hill*, 340 S.W.3d 398, 410 (Tenn. Ct. App. 2010)). The party seeking to enforce a contractual agreement for attorneys' fees bears the burden of proof as to whether a fee is reasonable. *Id.* (citing *Taylor v. T & N Office Equip., Inc.*, No. 01A01–9609–CV–00411, 1997 WL 272444, at *4 (Tenn. Ct. App. May 23, 1997)).[8] *See also Heartland Materials, Inc. v. Warren Paving, Inc.*, 384 F.Supp.3d 786, 794 (W.D. Ky. 2019) (observing that the Sixth Circuit's analysis of reasonableness of attorneys'

---

[8] In deciding whether a requested fee is reasonable, courts consider:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the service; and (8) whether the fee is fixed or contingent.

*EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 362 F. Supp. 3d 446, 450 (M.D. Tenn. 2019) (quoting *VRF Eye Specialty Grp.*, 765 F. Supp. 2d at 1034) (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 177 (Tenn. 2011); *Connors v. Connors*, 594 S.W.2d 672, 676 (Tenn. 1980)).

fees in fee-shifting cases also extends to contractual fee shifting) (citing *Advanced Accessory Systems, LLC v. Gibbs*, 71 F. App'x 454 (6th Cir. 2003)).[9]

Plaintiffs argue that the amount of the attorney's fees that they are seeking is irrelevant for purposes of determining whether their agreement is enforceable. (Docket No. 56 at 2.) While the Court finds this to be an accurate statement as to whether a settlement contract exists here, the amount of attorneys' fees is not irrelevant for purposes of determining whether the fees are reasonable.[10] Plaintiffs bear the burden of demonstrating reasonableness of their fees, notwithstanding that Defendants agreed to payment as part of the settlement of this case.[11]

In short, Defendants agreed to pay Plaintiffs' attorneys' fees. Defendants did not negotiate a limitation on attorney's fees or otherwise seek to limit the fees during bargaining. *See, e.g.*, *Safeco Ins. Co. of America v. City of White House*, 36 F.3d 540, 546 (6th Cir. 1994) (when acceptance mirrors the offeror's terms, "neither omitting nor adding terms," a contract is created).

---

[9] That Plaintiffs' fees are subject to a reasonableness determination is further supported by the parties' 2022 Settlement Agreement, which provided for collection of "reasonable attorneys' fees" from the breaching party. (Docket No. 1-2 at 10.)

[10] The Court also notes that Plaintiffs may not recover twice for any attorneys' fees that they may ultimately be awarded in connection with the earlier discovery dispute in this case, the amount of which remains under advisement. *See* Docket Nos. 40 and 46.

[11] The Court's local rules provide procedures for Plaintiffs to seek allowance of a specific amount of attorneys' fees. *See* Local Rule 54.01(b)(1) and (c). The Court notes that the requirements of Local Rule 54.01(c) are different from the exception included in a prior order that "counsel for Plaintiffs are not required to procure a declaration from a third party regarding the reasonableness of the rates but may instead submit a declaration or affidavit from one of counsel stating that the rates are those ordinarily charged to clients and within known market rates." (Docket No. 40 at 10, ¶ 5.) However, the Court finds no continuing basis for an exception to the requirements of Local Rule 54.01(c).

Rather, Defendants agreed to a settlement, as part of which Defendants would pay Plaintiffs "all unpaid obligations … including attorneys' fees and expenses." (Docket No. 52-2 at 14.)[12]

Beginning with the email from Defendants' counsel on November 7, 2023, which detailed eight settlement terms and continuing through the November 12, 2023 response from Plaintiffs' counsel with requested modifications, the further modifications proposed by Defendants' on November 27, 2023, and the final acceptance by Plaintiffs' on December 1, 2023, all as detailed above, these expressions of assent are generally sufficient under Tennessee law to show a meeting of the minds, including as to the provision for Defendants' payment of Plaintiffs' attorneys' fees.

Enforceability of the parties' settlement is not negated by Defendants' claims of later changed circumstances. Defendants contend, in their response to Plaintiffs' motion to enforce the settlement, that, "in the interim between negotiating the settlement terms and presentation of the agreement, Defendants' business was less profitable than anticipated and Defendants no longer had the liquidity to make the initial $30,000.00 payment, must less the second $30,000.00 payment that would be required in February." (Docket No. 55 at 2.) Defendants offer no legal authority supporting that they can be relieved of the consequences of their settlement agreement because of these supposed later business developments. To the contrary, Defendants are bound by the terms of their settlement bargain. *See e.g. Remark, LLC v. Adell Broad. Corp.*, 702 F.3d 280, 283 (6th Cir. 2012) (a prior meeting of the minds is not undone by the decision of a party to back out of the

---

[12] Although Plaintiffs request that any judgment against Defendants include Plaintiffs' future costs of collection, including attorneys' fees and expenses (Docket No. 52-1 at 12), that was not the scope of the attorneys' fees provision to which the parties agreed. The agreement was for Defendants to pay "all unpaid obligations" owed to Plaintiffs, "including attorneys' fees and expenses." (Docket No. 52-2 at 14.) The Court expresses no opinion as to whether the original settlement agreement between the parties that underlies this litigation permits Plaintiffs to recover ongoing future costs of collection, including attorneys' fees and expenses.

last version, even it if is the most formal version of a settlement agreement); *Hemlock Semiconductor, LLC v. Summit Process Design Inc.*, No. 3:15-cv-664, 2016 WL 2595163, at *6 (M.D. Tenn. May 5, 2016) (citing *Remark, LLC*, 702 F.3d at 283); *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001) ("The existence of a valid agreement is not diminished by the fact that the parties have yet to memorialize the agreement.") (Internal citations omitted); *Kukla*, 483 F.2d at 621 (observing that the power of a trial court to enforce a settlement agreement has been upheld even where the agreement was neither arrived at in the presence of the court nor reduced to writing).[13]

### B. The unsigned Settlement and Reaffirmation Agreement is not enforceable.

However, the Court does not find that the unsigned Settlement and Reaffirmation Agreement is enforceable. This final draft included new terms that the parties had not discussed and to which Defendants did not agree. For example, Plaintiffs seek to enforce the "Down Payment" provision from the final draft, which included a reference to an "Event of Default." Those portions of the settlement agreement state:

2. <u>Down Payment</u>.

   (a) On the Effective Date, Defendants shall pay **$30,000** ("Down Payment") to Plaintiffs by wire transfer to an account designated by Plaintiffs on **Exhibit A** to this Agreement, which shall reduce Defendants' Indebtedness to Plaintiffs to **$428,985.09** ("Judgment Amount").

   (b) ***Provided, however,*** that if Defendants fail to pay the Down Payment, which failure shall be an Event of Default (defined below),

---

[13] Defendants neither argued nor provided any evidence that they were unduly influenced or fraudulently induced into entering into settlement or that the settlement is against public policy. Their failure to do constitutes waiver of any such arguments. *See Al Maqablh v. Heinz*, Civil Action No. 3:16-CV-289-JMH-CHL, 2018 WL 4186420, at *2-3 (W.D. Ky. Aug. 31, 2018) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) ("Issues averted to in a perfunctory manner, unaccompanied by some effort at developed augmentation, are deemed waived.").

then (i) the Judgment Amount will not be reduced by the amount of the Down Payment and will be equal to the Indebtedness, (ii) Defendants will be deemed to consent to the immediate entry of the Consent Judgment (defined below) in the full amount of the Indebtedness, and (iii) Plaintiffs will be entitled to the immediate entry of such judgment and may move unilaterally for such relief if Defendants refuse to join such motion.

* * *

14. <u>Events of Default</u>. Each of the following shall constitute an event of default under this Agreement ("Events of Default", each an "Event of Default"):

   (a) The failure to timely make any payment required by Section 2 [Down Payment], 4 [Repayment Plan], or 5 [Mandatory Partial Prepayment];

   (b) The appointment of a receiver, trustee, guardian, or other fiduciary over all or any portion of the property of either Defendant;

   (c) A general assignment for the benefit of creditors of either Defendant;

   (d) The filing of a petition for relief under Title 11 of the United States Code by either Defendant; or

   (e) The breach of any covenant, representation, agreement, or warranty made by any Party under this Agreement.

(Docket No. 52-4 at 3, 7.) Although the Court finds that the provision in Paragraph 2(a) was discussed and agreed to by all parties (Docket No. 52-2 at 11–15), the provisions in Paragraph 2(b) and Paragraph 14 do not appear to have been a subject of negotiation between the parties. While the parties agreed that "failing to make a quarterly payment when and in the amount agreed" would be an event of default under the settlement agreement (Docket No. 52-2 at 12, ¶ 4), they did not agree that Defendants' failure to make a down payment would be an event of default.

Instead, Plaintiffs included these provisions regarding "Down Payment" and "Events of Default" in the initial draft (Docket No. 52-3 at 3) to which Defendants responded with questions but not with acceptance. As detailed above, Defendants' counsel flagged two issues with the initial

draft, the amount of attorney's fees and Paragraph 18(b). (Docket No. 52-2 at 4.) Although Defendants' counsel did not address the provisions regarding "Down Payment" and "Events of Default," neither did she agree to those provisions.

Plaintiffs appear to argue that Defendants implicitly agreed to these terms even if they did not explicitly agree to them. Plaintiffs assert that "Defendants have never disputed that the Settlement and Reaffirmation Agreement they now refuse to sign does not evidence the Parties' agreement to settle this case; rather, they simply refuse to perform thereunder." (Docket No. 52-1 at 11.) First, Plaintiffs assertion is not entirely correct. Defendants, in their response, acknowledge that they agreed in principle to the terms of settlement detailed in the email exchanges described above. (Docket No. 55 at 1.) This at least implicitly disputes that there was agreement as to any other terms. Further, even if Defendants have not expressly disputed in briefing that the terms in the final draft are enforceable, it is also true that Defendants did not explicitly or implicitly agree to several material terms in the initial draft that were then included in the final unsigned Settlement and Reaffirmation Agreement, including what would comprise an "Event of Default" and the fact that failing to make the initial payment of $30,000 would be considered an "Event of Default." In addition, Defendants' behavior after the sharing of the final draft of the Settlement and Reaffirmation Agreement also supports the fact that they did not agree to the final draft. Plaintiffs acknowledge that Defendants' counsel made representations that Defendants did not intend to execute the final draft. (Docket No. 52-1 at 6.) For these reasons, the Court finds and concludes that the Settlement and Reaffirmation Agreement does not constitute a binding, enforceable contract between the parties. That does not, however, affect enforceability of the parties' original settlement terms. (Docket No. 52-1 at 2–3; Docket No. 52-2 at 12–15.)

Enforceability of the agreed-upon terms is not undone by the fact that the parties ultimately did not agree on further settlement terms. *See discussion in Part II.A supra.* Accordingly, while the Court finds that the parties agreed to the original settlement terms, as described above, the unsigned Settlement and Reaffirmation Agreement is not an enforceable contract.

### III. RECOMMENDATION

For all these reasons, it is respectfully **RECOMMENDED** that:

1. Plaintiffs' motion to enforce settlement (Docket No. 52) be **GRANTED IN PART** as detailed above, and specifically that:

   a. The settlement terms to which the parties agreed via email correspondence, as set forth in Plaintiffs' memorandum in support of their motion (Docket No. 52-1 at 2–3), be enforced.

   b. The settlement terms in the final draft of the Settlement and Reaffirmation Agreement (Docket No. 52-4) not be enforced.

2. Because there is no dispute that Defendants did not make the quarterly payments as agreed, final judgment be entered against Defendants, jointly and severally, in the sum of $328,721.94, with interest accruing at 8% per annum beginning on October 16, 2023, plus attorneys' fees in an amount to be determined upon proper motion, less any amount of attorneys' fees otherwise awarded in this case.[14]

3. Upon entry of any final judgment in this case, Plaintiffs be required to file a motion for attorneys' fees in accordance with Local Rule 54.01(b)(1) and (c).

---

[14] The undersigned recommends that should this report and recommendation be adopted, Plaintiffs be directed to submit a proposed order of final judgment, which includes these basic terms and any other provisions of the parties' original settlement (Docket No. 52-1 at 2-3) that are consistent with the foregoing.

18

Case 3:23-cv-00244   Document 58   Filed 03/28/24   Page 18 of 19 PageID #: 707

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (*en banc*). Any responses to objections to this Report and Recommendation must be filed within 14 days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

    Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge